Argued and submitted May 3, reversed in part; otherwise affirmed on appeal; vacated and remanded in part; otherwise affirmed on cross-appeal August 21, 2002

In the Matter of the Marriage of

Annette TIBBETTS,
fka Annette Mueller,
*Appellant - Cross-Respondent,*

*and*

Ronald MUELLER,
*Respondent - Cross-Appellant.*

96 3321; A112635

52 P3d 1067

James D. Huffman argued the cause for appellant - cross-respondent. With him on the briefs was Huffman & O'Hanlon.

J. Michael Dwyer argued the cause for respondent - cross-appellant. With him on the brief was Dwyer & Miller LLP.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Wife appeals and husband cross-appeals after the trial court reopened the parties' dissolution of marriage proceeding under ORS 107.452. Previously, the parties had filed a co-petition for the dissolution of their marriage, and a judgment on the co-petition had been entered. The initial judgment made no mention of the parties' minor child born before their marriage, and did not make any disposition of the marital residence. Two years after the judgment was entered, husband filed a document with the court that was entitled, "Supplemental Petition for Child Custody."[1] Wife moved to reopen the case under ORS 107.452 because of the omission of the residence from the judgment. Thereafter, the trial court ruled that ORCP 71 was inapplicable,[2] reopened the case under ORS 107.452,[3] and held that the residence was a marital asset that had been inadvertently omitted from the initial judgment. It awarded custody of the child to wife, with a child support obligation to be paid by husband. It awarded wife a judgment for $652 as her share in the appreciated value of the marital residence. It also awarded wife $1,000 in attorney fees, and ordered that the birth certificate of the child be modified to reflect husband's surname. Both parties appeal from the resulting judgment, which we review as part

---

[1] Husband makes no reference in the petition to any statute or procedural rule authorizing such a petition. Because no issue arises on appeal concerning the trial court's ruling on the petition, we make no further comment on the procedural propriety of husband's motion.

[2] ORCP 71 provides grounds for the correcting of clerical errors and the vacating of judgments.

[3] ORS 107.452 provides, in part:

"(1) A court that entered a judgment of marital annulment, dissolution or separation shall reopen the case upon the motion of either party if the moving party *alleges* that significant assets belonging to either or both of the parties:

"(a) Existed at the time of the entry of the judgment; and

"(b) Were not discovered until after the entry of the judgment.

"(2) If the court finds that the assets were inadvertently omitted from the distribution of the marital estate, the court shall make such distribution of the omitted assets as is just and proper in all the circumstances." (Emphasis added.)

ORS 107.452(3) affords additional relief to the moving spouse if the court finds that the assets were "intentionally concealed."

of the judgment of dissolution under ORS 107.105. We reverse in part and otherwise affirm.

The parties are in their late thirties. They began to cohabit in November 1993. Wife then left husband temporarily while pregnant with their child, a son, and moved to Iowa. The child, whom wife gave the surname Tibbetts (using wife's surname), was born in Iowa in December 1994. On his birth certificate, wife caused "unknown" to be written in the "father's name" blank. Wife eventually returned to Oregon and reunited with husband. The parties were married in May 1995. Blair, husband's stepmother, then offered to assist the parties in buying a residence, stating that she wanted the child to have a stable home.

According to husband's evidence, Blair and the parties worked out a financial arrangement for the purchase of a residence. Pursuant to their arrangement, the parties each opened a bank account in Blair's Hawaii bank. Blair then gave $10,000 to husband and $10,000 to wife so that her gifts would remain within the gift tax limit. The parties deposited the funds into their individual Hawaii accounts. Husband's account also contained money from past gifts from Blair. Before any funds were deposited into the accounts, wife made a written request to the bank to transfer $9,000 from her account into husband's account. Wife then requested that the bank send the initial down payment on the residence through a check written from the combined funds in husband's account. The parties were both present for the inspection of the house purchase in February 1996, and for discussions with the realtor. Only husband's and Blair's signatures appear on the relevant closing documents. After the house was purchased, wife and husband lived together in the house for three months. During that time, wife made no contribution toward the property taxes or insurance. Wife moved out of the residence in June 1996 with the child. Wife's evidence at hearing conflicts with husband's evidence. According to her, the $10,000 was an outright gift to her, she elected to invest $9,000 in the residence, and she also contributed to its appreciation in value during her residency.

In August 1996, the parties filed their co-petition for dissolution of their marriage. In the co-petition, which the

parties prepared *pro se*, they completely omitted any mention of the child, both in regards to custody and child support. The property portion of the co-petition indicates that all property was "previously divided." At the time, the parties had been married for approximately 15 months. The court entered a judgment of dissolution in September 1996 in accordance with the allegations of the co-petition.

After the dissolution, the child lived first exclusively with wife and then, after husband initiated the custody proceeding, alternated between both parties. In January 1998, husband filed a petition for custody of the child. In her response to the petition, wife opposed husband's request for custody and also asked that the court reopen the dissolution case to award her a portion of the value of the residence. She asserted that she had not previously been aware that husband was a part-owner of the residence with Blair but instead had believed that Blair was the sole owner. She alleged that husband and Blair had concealed husband's interest in the residence and that she had an interest in the residence by virtue of the $9,000 she contributed from her Hawaii savings account toward the purchase. In his written response to wife's motion, husband did not request a change in the child's surname.

The trial court bifurcated the issues for hearing. It is unclear whether the entire record in the custody and child support hearing is part of the record in this appeal. Ultimately, the court entered an order in May 1999 determining that the child was a child of the parties. It awarded custody to wife with visitation to husband and ordered husband to pay child support. The order provided that the remaining issues were subject to a further hearing and decision by the court.

In a hearing in March 2000, the parties presented their arguments and evidence from multiple witnesses as to the property division and the residence issues. At that hearing, husband's counsel stated,

"[T]he only other thing, Your Honor, is that we did make a motion some time ago that still hasn't been addressed * * * for a court order ordering [wife] to put [husband's] name on the birth certificate. * * * [W]e have also made a motion

that the child be given [husband]'s surname, so I'd like to address that as well while we're here."

Wife's counsel objected, arguing that Jonathan's surname was not at issue. The trial court instructed the parties to file affidavits and memoranda if they desired and commented,

"* * * I don't think I need any testimony. I tell you what I'm gonna do. I'll give each of you what, ten days * * * You can file anything you want, affidavits, memoranda, whatever. I'm not going to have a hearing. You file it to me and I'm going to decide it."

Within the time limit, wife submitted a memorandum regarding her opposition to father's request to change the child's surname. In it, she argued that "this matter is not properly before the court by pleading, motion or otherwise, and the court is without jurisdiction to hear the matter." She also asserted that "[she] has a right to provide testimony on these issues in order to afford due process," and that "there is no evidence upon which the court could find that it is in the child's best interest to change the child's name." Accompanying her memorandum was an affidavit alleging several reasons why, in her view, it would be detrimental to Jonathan to change his name. As far as the record before us shows, husband submitted nothing in response to the court's invitation.

After the hearing, the court ruled that it was reopening the case under ORS 107.452. It found that the residence was "inadvertently omitted from the distribution of the marital estate," because "it seems clear from all the evidence that neither of the parties believed the house purchased by [Blair] was a marital asset." The court said,

"The elaborate alleged gift of $10,000.00 to [wife] on condition that she return $9,000 of it to [husband] for the purchase of the house simply made [wife] a conduit[,] and I don't believe [wife nor husband] believed [wife] had acquired any interest in the property at the time of their divorce."

The court also found that the house was in fact a marital asset and that, during the time the parties lived in the house, they "equally contributed to the marriage in that they both

worked, perhaps [wife] more than [husband]." The court awarded wife a portion of the appreciation in value of the house from the time of the purchase until the time of the dissolution. It calculated that the house was purchased for $127,950, that its value was $158,000 in January 2000, and that the value had therefore increased approximately $30,000. It apportioned the appreciation over the time period between February 1996 (when the residence was purchased) and January 2000. Based on the fact that wife left the residence on June 15, 1996, the court awarded wife $652 as her share of the appreciation. It also ordered the change of the child's name, as husband requested.

On appeal, wife makes three assignments of error: (1) the trial court erred in ordering the change of the surname of the parties' minor child to father's surname; (2) the trial court erred in failing to award wife a greater share of the value of the family residence; and (3) the trial court should have awarded wife all of her attorney fees, not just a part. On cross-appeal, husband makes two assignments of error: (1) the trial court erred in reopening the case under ORS 107.452 because both wife and husband knew about the residence at the time that they filed their co-petition for dissolution; and (2) the trial court failed to follow the procedures required by ORCP 68 when it made the award of attorney fees to wife.

We first consider wife's second assignment and husband's first assignment of error on the cross-appeal. Wife argues that the trial court erred in awarding only $652 to wife as her share of the residence. First, she argues that "it is inequitable to award [wife] such a negligible amount of the family residence when the uncontroverted evidence shows that she contributed the bulk of her $10,000 bank account for the down payment." Second, she argues that, under ORS 107.452(3), she is entitled to a greater award because husband "intentionally concealed" the asset. Husband responds that the court should not have reopened the case at all because wife knew about husband's ownership interest in the house at the time the initial dissolution documents were prepared and filed. He points to evidence that wife was present when many of the ownership documents were signed, and he asserts that she was aware that husband and Blair were both

involved in the transaction. He also argues that wife was not an intended recipient of any gift from Blair and that wife did not contribute her own funds to the purchase. He explains:

> "[Blair] * * * gave [husband] a 20% interest in the house as a gift. This was an advance on Husband's inheritance. There was no intent to create an ownership interest for Wife. Wife made no financial contribution to the house in the brief three-month period she lived there. [Blair] provided the money for husband's contribution and the balance of the purchase price."

ORS 107.452(1) provides that a court "*shall* reopen the case * * * if the moving party *alleges* that significant assets * * * (a) existed at the time of the entry of the judgment; and (b) [w]ere not discovered until after the entry of the judgment." (Emphasis added.) Wife alleges in her motion to reopen that "there are significant marital assets within the jurisdiction of this court that were inadvertently omitted from the decree due to intentional concealment by [husband]" and that "[wife] discovered the omitted assets after the judgment and decree of dissolution was entered." In light of such allegations, the trial court correctly reopened the case under ORS 107.452(1), and we affirm on husband's first cross-assignment of error.

We turn to wife's assignment of error that wife was entitled to a greater share of the value of the residence. First, our *de novo* review of the record does not persuade us that husband intentionally concealed from wife his ownership interest in the residence. The evidence shows that wife opened a bank account in Hawaii on January 30, 1996, as Blair had instructed. Thereafter, she received $10,000 from Blair on the same day, solely for the purpose of allowing Blair to assist with the purchase of the house without incurring gift tax consequences. Wife instructed her Hawaii bank, *even before she opened the account* and deposited the gift from Blair, to immediately put all but $1,000 of the funds from Blair into husband's bank account so he could use them for the purchase of the home. In a letter written by wife and dated eight days before she received the gift from Blair, she wrote:

"Please transfer $9,000 to my husband's account. His book is enclosed. Then he would like you to send a check for $26,000 from his account to Escrow [at] First American Title[.] [signed by wife]"

In our view, the evidence is clear that wife was, in the trial court's words, "a conduit" for money that was intended for the purchase of the house.

ORS 107.105(1)(f) provides, in part, that "[t]here is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held." In *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982), the Supreme Court held that the presumption under the statute is rebutted when evidence shows that the property was acquired by a gift which was received by one spouse and that the gift was unrelated to the other spouse's efforts or that the other spouse was not the object of the donative intent.

Here, Blair testified,

"I bought the house in early January of '96. [Husband] had had a son and they were living in the mother's first husband's shack up in Scappoose and it was—there was wind blowing through the cracks, there was no bathroom adequately for the little boy to be bathed, there was no washer and dryer, so I decided the best thing I could do for [husband] was give him some of [his] inheritance now and get them set in a comfortable place, and also they'd be free of rent.

"* * * * *

"[Husband] had some funds. I had given him $10,000 before the turn of the year and then at the—when the year turned I gave him another $10,000 which was—I could give a gift of $10,000 every year, and then I made a deal with [wife] where if I gave her $10,000 she would give [husband] back $9,000 and she could have $1,000 for herself, but I wanted [husband] to get enough money together to buy a fifth interest in the house[.]"

We conclude from the above testimony, as did the trial court, that wife was not the object of Blair's donative intent. We also conclude that the trial court ruled correctly that wife was entitled only to the appreciation in the value of

the residence that accrued during her occupancy. *See, e.g., Kampmann and Kampmann*, 108 Or App 407, 410, 816 P2d 642, *mod on other grounds on recons* 110 Or App 100, 820 P2d 1379 (1991) ("As a general rule, both spouses are entitled to share in any increase in value of marital assets that occurs during the marriage, even if one spouse was the source of all of the parties' assets at the beginning of the marriage.") (citations omitted). Because wife lived in the marital residence for only four months, her interest in its appreciated value is limited to a portion of the amount attributable to that period. Wife's significant involvement in the property transaction with Blair also defeats her argument under ORS 107.452(3) that husband intentionally concealed his interest in the residence from her.

■       We next consider wife's third assignment of error in conjunction with husband's second cross-assignment of error. Both assignments deal with the propriety of the court's award of attorney fees to wife of $1,000. Wife argues that the court should not have limited her award to $1,000 when husband was aware that custody and support of Jonathan could have been litigated in the initial dissolution proceeding. In other words, she contends that husband's own conduct created the need for further proceedings and that husband should be required to pay more of her fees. Husband responds that it was error for the court to award attorney fees without taking evidence or holding a hearing on the issue because husband had specifically requested that the court follow the procedure provided in ORCP 68 in deciding whether to award fees.

■       Our holdings in *Young and Young*, 172 Or App 108, 17 P3d 577 (2001), and *O'Neal and O'Neal*, 158 Or App 431, 433, 974 P2d 785 (1999), are determinative. In *Young*, we held that, in a case where ORCP 68 applies,

"the procedural requirements of ORCP 68 are mandatory and * * * failure to follow those procedures is prejudicial to the party deprived of the appropriate process. [*O'Neal*, 158 Or App at] 435. We described that process as a guarantee[ ] that 'all parties will be able to present their positions to the court in a structured manner and have an opportunity to

contest those of their opponents. * * * Denial of this important process corrupts the system and infringes on the rights of each party.' *Id.*" *Young*, 172 Or App at 111-12.

We concluded:

"Here, the trial court awarded fees without affording mother the opportunity to respond to father's statement, as prescribed by ORCP 68 C(4)(b). Accordingly, the judgment for fees must be reversed and remanded for further proceedings. *See O'Neal*, 158 Or App at 436." *Young*, 172 Or App at 112.

In this case, wife's attorney tendered a proposed judgment to the court and husband's counsel after receiving the court's letter opinion, which included an award of attorney fees of $1,000 to wife. In response, husband's counsel wrote to the court and wife's counsel:

"Please revise [your proposed form of judgment] to read: 'as and for partial attorney fees **not to exceed** $1,000. Counsel for Petitioner is directed to submit his affidavit of attorney fees in accordance with ORCP 68.' You will also need to file a supplemental judgment for attorney fees and costs.

"* * * Please delete item 4 and replace it with the following: 'Counsel for Petitioner is directed to submit an affidavit of costs and disbursements according to the provisions of ORCP 68.'

"* * * * *

"* * * Please delete money judgments for attorney fees and costs and resubmit them in the form of a supplemental judgment after following the procedures in ORCP 68." (Emphasis in original.)

In response, wife's attorney submitted a "statement of costs and disbursements," including filing fees, subpoena fees, witness fees, copying charges and trial fees. In the statement, counsel stated: as to "attorney fees—ORCP 68 Previously Awarded." After additional correspondence about the other costs and disbursements, husband's counsel submitted a form of judgment to the court that omitted attorney fees in accordance with his suggestion in his letter to wife's counsel. That judgment was not signed by the court. Instead, the court signed the judgment submitted by wife's counsel that

included the award of attorney fees. No hearing was ever held on husband's objection.

We hold on those facts that the trial court erred in awarding attorney fees to wife without holding a hearing and following the procedures of ORCP 68. Husband's objections to the entry of a judgment including attorney fees specifically directed the court's attention to ORCP 68 and husband's request for a hearing. The portion of the judgment awarding fees to wife is vacated and that issue is remanded to the trial court for further consideration. Our ruling renders wife's third assignment of error moot.

■     Finally, we turn to wife's first assignment of error regarding the court's order that the child's surname be changed to Mueller. Wife argues that the issue was not properly before the court by motion or otherwise, that she was not given a fair opportunity to contest the matter, and that husband failed to meet his burden of proof to justify a name change. We begin with the latter argument because it is dispositive.

■■     In order to change a child's legal name, the moving party bears the burden of establishing that the change of name is in the child's best interest. *Aylsworth v. Adams*, 85 Or App 382, 736 P2d 225, *rev den* 303 Or 700 (1987); *Gleason v. Michlitsch*, 82 Or App 688, 728 P2d 965 (1986). Our opinion in *Gleason* is particularly instructive. In that case, the judgment on appeal declared the father's paternity, awarded custody to the mother, and established a support obligation and visitation schedule for the father. The judgment also directed that the child's surname be changed from the mother's name to the father's name. On appeal, we reversed the order changing the child's surname, observing,

> "Although there is no specific statutory provision that prescribes the governing standard, we agree with the court that the correct standard is the best interests of the child.
>
> "* * * * *
>
> "Generally, we give weight to the decision of a trial court as to the best interests of a child when it has had the opportunity to view the witnesses and hear the testimony. Here, however, the evidentiary record does not support the court's

conclusion that there would be 'psychological ill effects' on the child or that it would otherwise not be in his best interests if he were to bear his mother's last name and have to associate at school or elsewhere with children who bear their father's last name." *Gleason*, 82 Or App at 690-91 (citations omitted).

We also pointed out that the "identity of the custodial parent is an important fact in determining the relationship of the child's best interests to the surname which [the child] should bear." *Id.* at 691.

■ In this case, there is no persuasive evidence as to why the child's best interests would be served by a change to husband's name. Apparently, husband did not respond at all to the court's invitation to submit affidavits, legal memoranda, or other documents to support his request. On appeal, he argues only that "the court could base its ruling on the testimony taken at the custody/parenting time hearing and on public policy grounds." We disagree. Under our case law, husband had the burden of showing that the child's best interests will be affirmatively served by changing his name. There is no evidence before us sufficient to carry that burden. Moreover, public policy militates against changing a child's name after the child has used that name exclusively. *See Aylsworth*, 85 Or App at 385 ("[T]hat is the only last name for his mother and himself of which the child has been aware."). That is especially important when the child's name, if changed, would be different from his primary custodial parent's name. *See Gleason*, 82 Or App at 691, *quoting Spence-Chapin Services v. Tedeno*, 421 NYS 2d 297, 300 (1979) (" 'The significant consideration is that the mother has custody * * * [T]he court recognizes that children, as they grow older, generally prefer to use the name of the parent with whom they live.' "). The trial court's order changing the child's surname to husband's, on the state of the record in this case, was error.

On appeal, order changing child's name reversed; otherwise affirmed. On cross-appeal, attorney fee award vacated and remanded; otherwise affirmed. Costs to neither party.