Argued and submitted July 24, reversed October 1, 2014

In the Matter of the Marriage of

Curtis STOECKLIN,
*Petitioner-Respondent,*
*and*

Audrey Lynn CRIPPEN,
fka Audrey Lynn Stoecklin,
*Respondent-Appellant.*

Washington County Circuit Court
C114813DRC; A153768

337 P3d 164

Philip F. Schuster, II, argued the cause for appellant. On the briefs were Loren M. Thompson and McGuire Thompson, LLC.

Mark Johnson Roberts argued the cause for respondent. With him on the brief was Gevurtz, Menashe, Larson & Howe, P.C.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Mother and father were separated but still married when their son was born, and mother gave the child her own original last name, C. After entry of a judgment that dissolved their marriage and awarded legal custody to mother, father petitioned the trial court to change the child's last name to his own last name, S. The trial court ordered the requested change by a supplemental judgment, which mother now appeals, asserting that the name change is not in the child's best interest because mother is the custodial parent and father's abusive conduct led to the marital dissolution. We conclude that the trial court's findings and the evidence do not support its determination that the name change was in the child's best interests and, accordingly, we reverse.

We are bound by the trial court's factual findings if there is any evidence to support them. *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541 n 1, 273 P3d 361 (2012). We, accordingly, state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record. *Id.* at 541.

Mother and father were married in June 2011, and mother became pregnant immediately after the wedding. As expectant parents often do, mother and father contemplated various first and middle names for the child, with the assumption that the child would be given their married name, S. During mother's pregnancy, father began to secretly record and monitor her activities from his mobile phone, and then uploaded those audio and video recordings to his work computer. The police were called to the couple's home several times due to father's abusive behavior; eventually, father was convicted of fourth-degree felony assault, ORS 163.160(3), based on his assault of mother when she was six-months pregnant.

Mother sought a Family Abuse Prevention Act (FAPA) restraining order against father, ORS 107.700 - 107.735, and a hearing was held in February 2012. Father questioned the child's paternity at the hearing. The child was born a week-and-a-half later, in March 2012, and, when mother submitted the form for the child's birth certificate,

she selected C as the child's last name. Father was not present at the birth, and he waited three weeks before his attorney contacted mother's attorney to ask about the birth of his child. The FAPA hearing concluded in May 2012, and mother was given temporary custody of the child. The marital dissolution trial was held in August, and mother was awarded legal custody of the child and returned to her original name of C; the child's last name was not raised as an issue.

In October 2012, seven months after the child's birth, father petitioned to have the court change the child's last name to S. The supplemental judgment granting father's petition incorporated the following oral findings:

> "The first and foremost factor that I'm looking at here is that there was an agreement that the child's name was going to be [S] before the child was born. And [m]other changed that because she was angry. She felt shocked, hurt and discouraged when she misread [f]ather's statement about how he wanted for once and forever put to rest the issue of paternity.

> "*****

> "But the reality is that the name was chosen not out of love and joy, but out of hurt and anger and shock. And so we end up with the child not bearing the name that was originally planned for the child to have. And so—and the child is young enough [that the] child has not really used a last name effectively anywhere except the doctor has some chart. And maybe the school has some chart.

> "But those are easily changed. * * *

> "[Mother's] name should be on the child. So [C] is going to be a middle name. So his name is going to be—[first name and middle name] [C]-[S].[1] So [S]is going to be his last name. And so that means that's going to be his name at school, the doctors, everywhere that last name is used. His name is [S]. It's not represented as anything else.

---

[1] The supplemental judgment changed the name to

| <u>First Name:</u> | [name] |
| <u>Middle Names (two):</u> | [name] [C] |
| <u>Last name:</u> | [S]" |

(Underscoring in original.)

"That's what the plan was. That's in the best interest of the child, that keeps [f]ather from being disincorporated or disenfranchised from the child. And that's what it should've been and would've been but for [f]ather's foolish abuse of [m]other and his very foolish recording. And you know, it was creepy behavior, Mom. It was creepy. You're right.

"*****

"But I think this was a decision that was made out of hurt and anger. And it was a mis-decision. And it was not in the best interest of the child to pick that name when [an]other name was already picked for him."

To summarize, the trial court determined that changing the child's last name was in the child's best interests because (1) there had been an "agreement" between mother and father that the child would have father's last name; (2) mother's choice to give the child her own last name, despite that original understanding, was made out of "hurt and anger"; and (3) providing the child with father's last name would prevent father "from being disincorporated or disenfranchised from the child."

Although mother seeks *de novo* review, we decline to exercise our discretion to conduct such review. *See* ORAP 5.40(8)(c) (stating that we exercise *de novo* review only in "exceptional" cases). The party requesting a name change for a child "bears the burden of showing 'that the change of name is in the child's best interest.'" *Doherty and Wizner,* 210 Or App 315, 322, 150 P3d 456 (2006). We review a trial court's best-interest determination for abuse of discretion and will reverse only if a trial court's discretionary determination is not a legally permissible one. *Sjomeling v. Lasser,* 251 Or App 172, 187, 285 P3d 1116, *rev den,* 353 Or 103 (2012); *see McCollum v. Kmart Corporation,* 228 Or App 101, 113-14, 207 P3d 1200 (2009), *vac'd on other grounds,* 347 Or 707, 226 P3d 703 (2010) ("'Abuse of discretion,' as a legal term of art, means that the court's action or decision was not 'within the range of legally correct discretionary choices' and did not produce a 'permissible, legally correct outcome.'" (Quoting *State v. Rogers,* 330 Or 282, 312, 4 P3d 1261 (2000).)); *Forsi v. Hildahl,* 194 Or App 648, 652, 96 P3d 852 (2004), *rev den,* 338 Or 124 (2005) ("The trial court

abuses its discretion if it exercises that discretion in a manner that is unjustified by, and clearly against, reason and evidence.").

Although "there is no definitive list of factors to consider when deciding what would be in the child's best interest," the following factors are among those that we and other courts have used:

"1.   The identity and preference of the custodial parent. * * *

"2.   The avoidance of embarrassment, inconvenience or confusion. * * *

"3.   Identification of the child as being part of a distinct family unit. * * *

"4.   The age of the child and the length of time the child has used the surname. * * *

"5.   The preference of the child. * * *

"6.   The effect of a name change on the relationship between the child and each parent. * * *

"7.   Parental misconduct. * * *

"8.   The level of support for and contact with the child. * * *

"9.   The motivation of the parent seeking the name change or the parent seeking to oppose it. * * *

"10.   The community reputation associated with the names at issue. * * *

"11.   Assurances of the custodial parent that she or he will not change hers or his own surname or the child's surname. * * *

"12.   Important ties to family heritage, ethnic identity, and cultural values. * * *"

*Doherty*, 210 Or App at 324-26 (boldface omitted).

Mother argues on appeal that the trial court placed too much importance on the parties' original plan that the child would have father's last name; that plan, she notes, was made before father's recording of mother's activities, his physical abuse of mother, a FAPA hearing, their separation,

and father's petition for dissolution. She acknowledges that she was angry with father when the child was born but contends that it was rational and logical for her to choose her own last name for the child; father's interest in the child was uncertain at that time and she believed that she would obtain legal custody. Moreover, mother points to several of our decisions where the preference of the custodial parent was an important factor in determining the child's best interests. Father remonstrates that applying the *Doherty* factors favors a determination that the child should have his last name, because the preference of the custodial parent is "tempered" by mother's reasons for choosing her own last name. He similarly contends that the *Doherty* reference to "the avoidance of embarrassment, inconvenience, or confusion" is also "tempered" because mother has no other children, has changed her name more than once and, if she has future children, "they will almost certainly not be named [C], and mother may well change her name again too."

Father concedes that none of the other *Doherty* factors favor him, except his motivations for seeking the name change. At trial, father testified that he was motivated to change the child's last name for the same reasons given by the trial court: there was an "agreement"; mother chose C out of anger; and that the child "not having my last name provides another way for him to be alienated from his father." Additionally, he stated that mother had tried to disparage the relationship between him and the child by discussing with friends and family that father had made an issue out of the child's true paternity and that she had indicated that she would eventually tell the child his father "was a criminal." He also expressed concern that if the child's "last name remains [C], he's also going to have that conversation with his friends and his peers on why he doesn't have his father's last name." Father also speculated that mother would change her name if she remarried, which would leave the child "the only sibling in mother's home with the name [C]"; his last name, he testified, "will never change."

Much of what father argues presumes that a child should have the name of his legal father. That presumption, though not named, also lurks in the trial court's analysis.

As we explained in *Doherty*, although the historical basis for such an unnamed presumption is beyond dispute, in Oregon and elsewhere the best interests standard has evolved toward a "more gender-neutral and child-centered inquiry." *Id.* at 322-24. Further, "[i]t is well-established law today that neither parent has a superior right in determining the child's last name." *Id.* at 322. That evolution is reinforced in ORS 109.030, which provides that "[t]he rights and responsibilities of the parents, in the absence of misconduct, are equal, and the mother is as fully entitled to the custody and control of the children * * * as the father." *See generally Doherty*, 210 Or App at 328 (rejecting any presumptions and preferences in application of the best interest of the child standard).

Although we do not presume that the custodial parent's preference of a last name is in the child's best interests, *id.* at 324, the custodial parent's identity and preference is, nevertheless, an important factor. *Id.* at 329; *Tibbetts and Mueller*, 183 Or App 379, 390-91, 52 P3d 1067 (2002); *Gleason v. Michlitsch*, 82 Or App 688, 691, 728 P2d 965 (1986). More than once, we have quoted approvingly a New York trial court's statement about the naming of children:

> "'The significant consideration is that the mother has custody and it is she who will be the primary caretaking figure and who will make the major decisions for [the child]. Moreover, the court recognizes that children, as they grow older, generally prefer to use the name of the parent with whom they live.'"

*Doherty*, 210 Or App at 329 (quoting *State ex rel Spence-Chapin Services v. Tedeno*, 101 Misc 2d 485, 489, 421 NYS2d 297, 300 (NY Sup Ct 1979)); *Gleason*, 82 Or App at 691 (also quoting *Spence-Chapin Services*); *Tibbetts*, 183 Or App at 391 (also quoting *Spence-Chapin Services*). In *Gleason*, we also referred to a Pennsylvania case where the court upheld a statutory provision that the choice of a last name rests with the custodial parent if the parents are divorced or separated at the time of birth, because "'[t]he custodial parent generally has the right to make major decisions affecting the best interests of a minor child.'" 82 Or App at 691 (quoting

*Petition of Schidlmeier by Koslof*, 344 Pa Super 562, 569, 496 A2d 1249 (1985) (brackets in *Gleason*)).

Other factors appear to be pertinent in this case. In *Doherty*, we stated that "it is foreseeable that giving the child her father's surname may lead to some confusion and possible embarrassment to the child at those times when the child is identified as having a different surname from the surname used by her mother and three siblings." 210 Or App at 329. We also recognized that a child having a last name different from the noncustodial parent's last name could possibly affect the child's relationship with that parent, but concluded that, "[i]n the final analysis, development of a bond between [the parent] and [the child] will depend on the love and devotion that [the parent] exhibits toward [the parent's child]." *Id*. at 331. "The surname the child uses is *incidental* to [the] process" of a parent "establishing and maintaining a strong bond" with his or her child. *Id*. at 331 n 36 (emphasis added).

With those observations in mind, we begin by noting that father, the party seeking the name change, "bears the burden of establishing that the change of name is in the child's best interests." *Tibbetts*, 183 Or App at 390. The trial court's emphasis on its finding that mother chose her last name for the child out of "hurt and anger," however, is directed at the initial naming of the child, rather than assigning to father the burden of showing that a change in the child's name is in his best interests; that finding, then, is misplaced and irrelevant. The motivation of the parent seeking the name change may be considered; father has not established the relevance of mother's original motivation.

Similarly, the trial court treated as most important— its "first and foremost" factor—that the parties had an "agreement" that the child would have father's last name. Again, however, the court's task is to determine whether the *change* to the child's name is in the child's best interests, not to examine the merits of the initial choice to name the child, which was made at a time when the parties were separated and mother was solely responsible for parental decisions. Indeed, father then appeared to be questioning paternity. As we have recognized before, *Gleason*, 82 Or App at 691, it

was appropriate for mother to choose the child's name under those circumstances. To the extent that the trial court believed that it was in the child's best interests to restore the child's name to what the parties originally planned, its findings do not explain why that is so. The inquiry is a child-centered one, and a conclusion that rests on the significance of the parents' original plans before their marital difficulties and separation turns the focus away from the child's well-being.

The trial court's third finding—that changing the child's last name "keeps [f]ather from being disincorporated or disenfranchised from the child"—lacks any evidentiary support. Whereas a custodial parent's preference that a child should have his or her last name facilitates practical decision-making and the custodial parent's duties as primary caretaker, the record lacks evidence that sharing a last name would foster a bond between father and the child. Development of a bond, as we have recognized, comes from the "love and devotion" that a parent exhibits toward his child.

Moreover, on this record, father has not carried his burden of proving that it is in the best interest of the child to change the child's name: father's contention that an application of the *Doherty* factors favors a determination that a name change is in the child's best interest is unavailing. His argument that the factor we consider to be an important one—the identity and preference of the custodial parent—is "tempered" because of mother's anger is not relevant for the reason stated above. Also, the avoidance of embarrassment, inconvenience, or confusion that would result in having a different name than the custodial parent is not "tempered" by father's mere speculation that mother will change her name in the future. Even if his concern was not speculative, giving import to that argument would conflict with a gender-neutral best interest determination. Furthermore, father's motivations for seeking the name change are insufficient to carry his burden. His concern that the child will have to explain eventually why his name is different than his father's rests on an assumption that a child is burdened with a stigma if he or she does not have the same last name as his or her legal father. Again, such a concern

is not in accord with our best interest standard. Father also expressed concerns about mother's statements regarding father's request for a paternity test and his criminal conviction. Although those statements may be unfortunate, father has not explained how changing the child's last name would alleviate those concerns. We note that father did establish paternity and sharing a last name with the child will not erase the record of his felony abuse conviction.

The findings of the trial court either are irrelevant to the task of determining the best interest of the child with regard to the requested name change or lack evidentiary support. Accordingly, its decision is outside the range of permissible discretion. Moreover, the record, viewed most favorably to father, could not support a determination by a reasonable trial court that a name change is in the child's best interest. Accordingly, a remand to permit further findings by the trial court is unwarranted.

Reversed.