OPINION OF THE COURT
Felice K. Shea, J.
The issue raised by this motion to modify an order of filiation is which parent, the mother or the father, shall have the right to have his/her name on the birth certificate of a nonmarital child. The question does not appear to have been considered by the courts of this State.
Petitioner, Cheryle Randall, asks the court to change its filiation order, signed May 19, 1979, to delete the phrase "her name is Alexandria Kristen Tedeno” and substitute the phrase "the said child’s name [shall] remain Alexandria Randall.” The order of filiation was signed on consent ancillary to a custody proceeding in which custody was awarded to petitioner mother.
The mother’s position is that while she consented to a filiation order adjudging Jeffrey Tedeno to be the father of her child, she did not know that Jeffrey Tedeno proposed to change the child’s surname from Randall to Tedeno, and that had she known, she would have opposed such a change. She contends that her consent is needed to change the child’s name, that the child has been known as Alexandria Randall since birth and that changing the child’s name serves no purpose. Petitioner argues also that the order was not settled upon her and that no basis exists in a custody proceeding for the order made by the court.
Respondent father opposes the motion on the grounds that the order was signed on consent and that no reasons exist which demand that Alexandria retain her mother’s maiden name. Furthermore, he contends that the motion is untimely.
 The technical objections of the parties are without merit. No prejudice has resulted from respondent’s failure to settle the order of filiation since petitioner’s arguments on the merits have been considered on this motion. Nor can petitioner prevail in her contention that no legal basis exists in the present proceeding for an order of filiation. It cannot be doubted that the Supreme Court has jurisdiction to enter an order of filiation despite the proviso in section 511 of the Family Court Act giving exclusive jurisdiction in paternity *487 proceedings to the Family Court. (See Matter of Seitz v Drogheo, 21 NY2d 181; Kagen v Kagen, 21 NY2d 532.) Moreover, section 564 of the Family Court Act specifically encompasses orders of filiation made in a proceeding other than one for filiation. The requirements of subdivision (b) of section 564 of the Family Court Act have been met; any technical deficiencies in the pleadings were waived by the consent at trial of the parties. Respondent’s argument that this motion is untimely is also ill-founded. Petitioner does not seek reargument, but even if the motion herein were to be so considered, it would be timely. A motion to reargue should be made within the statutory time for taking an appeal (Fitzpatrick v Cook, 58 AD2d 642), but the time for appeal commences to run from the time of service of an order with notice of entry and not, as respondent submits, from the date an order is made. (CPLR 5513.)
Petitioner cites no authority for her conclusion that the consent of the mother is needed for a direction placing the father’s name on a birth certificate. On the other hand, research has revealed no case in which the birth certificate of a nonmarital child was changed over the objection of the infant’s mother. In one case where an unwed father sought to compel the Department of Health to put his name on his child’s birth certificate, the father’s petition was dismissed without prejudice and without reference to the issue at bar. (Matter of "P” v Department of Health of City of N. Y., 200 Misc 1090.)
There are many cases which give a married father a right to have his child bear his surname. (See, e.g., Matter of Hinrichs v Beinecke, 41 Misc 2d 422; Steinbach v Steinbach, 119 NYS2d 708; Young v Board of Educ., 114 NYS2d 693; Matter of Cohn, 181 Misc 1021; cf. Matter of "Shipley”, 26 Misc 2d 204; see, generally, Note, 44 Cornell LQ 144.) Sections 61, 62 and 63 of the Civil Rights Law provide a statutory basis for a parent to bring a change of name proceeding when it is in the child’s interest, but the courts traditionally have defeated a married father’s right in the child’s surname only when there is clear evidence that the father’s surname will handicap the child. (See, e.g., Gonzalez v Gonzalez, 77 Misc 2d 745; Matter of Yessner, 61 Misc 2d 174; Matter of Fein, 51 Misc 2d 1012.)
Should the same test be applied to the unwed father in this case who wants his daughter to bear his name? Recent legisla *488 tion and case law reflect an increased concern for the rights of unwed fathers. (See, e.g., Family Ct Act, § 522; Caban v Mohammed, 441 US 380; Stanley v. Illinois, 405 US 645; Matter of "R” Children, 100 Misc 2d 248.) However, the concern expressed is that an unwed father be accorded the same rights as an unwed mother. Nowhere is it suggested that the father should be entitled to more rights than the mother. Indeed, such a result would be unthinkable.
The cases giving married fathers a right in the names of their offspring are not applicable to the facts before the court. All such cases involve an application to change or prevent a change in the name of a child who has borne a family name. Looked at from the child’s standpoint, there is a presumption that change is detrimental and must be justified. The situation here, where the child has never used her father’s name, is far different.
The court holds that neither parent has a right superior to the other to determine the surname of the child. The real issue before the court is whether Alexandria’s best interests will be served by an order directing that her name be changed to that of her father, or whether her interests will be better served by retaining her mother’s maiden name. It is true that such a judgment includes an element of speculation on the part of the court as to what the future may hold for Alexandria. On the other hand, the court took testimony for two days on the issue of Alexandria’s custody and there is a full record on which to base this decision.
At the time of trial, Alexandria was 20 months old. She had been placed as a foster child and had lived for approximately 11 months with Mr. and Mrs. Carmelo Tedeno, her paternal grandparents. The father saw his daughter frequently and exhibited interest in her welfare. He vigorously opposed petitioner’s custody proceeding and, together with his parents, urged that Alexandria should continue to live with the Tedeno family, where she had received loving care. Respondent is 22 years old and employed.
Petitioner is 19 years old. At the time of trial she was living in a stable relationship with a male friend, had established a close relationship with Alexandria and had a suitable home for the child. Petitioner testified that she would permit the father and his family to visit with Alexandria. Petitioner also stated, and the court observed, that the parties were hostile to *489 each other. The court found, after trial, that petitioner was a fit mother and entitled to custody.
Under all the facts and circumstances herein, the court finds that it is in Alexandria’s interest to retain her mother’s name on her birth certificate. There is nothing in the record to suggest that the father’s name would be a detriment to the child. There is proof that the father and his family wish to keep up a warm relationship with Alexandria. Nonetheless, the significant consideration is that the mother has custody and it is she who will be the primary caretaking figure and who will make the major decisions for Alexandria. Moreover, the court recognizes that children, as they grow older, generally prefer to use the name of the parent with whom they live. No evidence was submitted to show that the mother intends to marry in the near future. Nor may the court assume that petitioner would give up her maiden name in the event of marriage. For the foregoing reasons, Alexandria should be permitted to continue using her mother’s name.
Motion granted.