424 S.E.2d 266

**Erin LUFFT, now Erin Campbell, Plaintiff Below, Appellant,**

v.

**James LUFFT, Defendant Below, Appellee.**

**No. 20918.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Nov. 25, 1992.

Lorraine Eckard–Gaudino, Petroplus & Gaudino, Robert P. Fitzsimmons, Fitzsimmons & Parsons, Wheeling, for appellant.

William J. Ihlenfeld, Ihlenfeld & Ihlenfeld, Wheeling, for appellee.

BROTHERTON, Justice:

The appellant, Erin Campbell, appeals from the September 9, 1991, order of the Circuit Court of Ohio County, which affirmed the June 28, 1991, recommended decision of the family law master of Ohio County.

Samantha Campbell was born on August 4, 1988, to Erin Campbell and James Lufft. Her parents were not married at that time. Both the birth certificate and the certificate of live birth show the child's name as Samantha Marie Campbell, although Mr. Lufft acknowledged paternity of Samantha. The appellant contends that during her pregnancy, the appellee encouraged her to abort the child, but she refused.

In 1989, Ms. Campbell and Mr. Lufft began living together. They married on February 9, 1990, but separated several months later on August 4, 1990. They had lived together approximately one and one-half years. During that time, the appellant contends that she was physically abused, presenting as evidence two battery charges and one domestic violence petition that she had filed against the appellee while they lived together.[1] The testimony before the family law master included the testimony of Ms. Campbell and witnesses concerning the appellee's violent behavior. However, his arrest record was not introduced into evidence.

Ms. Campbell filed for divorce on November 30, 1990. A final hearing was held on March 19, 1991, which resulted in the family law master's recommended decision. During the March 19, 1991, hearing, there were allegations that the appellee used drugs and alcohol in the past, although he denied current use. Similar allegations were made against Ms. Campbell.

The family law master required that the appellee acquire health and medical insurance and make child support payments toward the support of Samantha. The child

support consisted of $165.00 a month, although the appellee apparently had not forwarded the support prior to the interlocutory hearing. At the final hearing, Ms. Campbell testified that the appellee had not provided Samantha with medical coverage as required in the interlocutory order. Ms. Campbell was granted custody of Samantha and the defendant was permitted supervised visitation. The visitation was supervised until May 1, 1991. After May 1, 1991, the visitation was unsupervised according to the guidelines for custody and visitation which allowed visitation every other weekend. At the March 19, 1991, hearing, the appellant requested that her maiden name, Campbell, be restored. At the same time, the appellee requested that Samantha's name be changed from Samantha Campbell to Samantha Lufft. The family law master granted Mr. Lufft's request and recommended that Samantha's name be changed to Lufft. Judge Spillers adopted the family law master's recommended decision as the findings and conclusions of the court.

█ The appellant first asserts that the family law master was incorrect in granting the appellee's request that Samantha's name be changed to Lufft without following the requirements of the statutes for name changes—W.Va.Code § 48–5–1 and W.Va.Code § 16–5–24(d)—and without setting forth factors showing the name change is in the best interest of the child. The appellee, by contrast, argues that the family law master was correct to change Samantha's name to Lufft. The appellee's argument depends heavily on the theory that unless Samantha's surname was Lufft, she would be tarred forever with the stigma of illegitimacy. Quoting *State v. Bragg,* 152 W.Va. 372, 163 S.E.2d 685 (1968), the appellee asserts that the Supreme Court of West Virginia has repeatedly held that the statute "should be liberally applied in favor of the children involved in this case in order ... to relieve children in such circumstances of the stig-

---

**1.** Ms. Campbell also contends that the appellee was currently battering his present girlfriend, who had also filed battery charges against the

appellee in the past. It is impossible to tell whether the family law master considered that evidence.

ma of illegitimacy, as well as to ameliorate in a great measure the harsh legal burdens which otherwise attach to children of illegitimate birth." *Id.*, at 377, 163 S.E.2d at 688.

■ While his concern might have been legitimate twenty years ago, there is little reason to fear the stigma of illegitimacy today. West Virginia Code § 42–1–5 (1982) provided that "[b]astards shall be capable of inheriting and transmitting inheritance on the part of their mother, as if lawfully begotten." In *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981), this Court held that the distinction that legitimate children could inherit through both mother and father, but illegitimate children could inherit only through their mother, was discriminatory and offended Article III, § 17 of the West Virginia Constitution. "Illegitimacy is a suspect classification entitled to strict scrutiny by our Constitution, art. III, § 17, and thus W.Va.Code, 42–1–5, as written, restricting inheritance by an illegitimate child to inheritance from his or her mother, is unconstitutionally discriminatory." *Id.* at syl. pt. 1. The Court in *Adkins* ruled that trial courts were to evaluate each case of illegitimate children inheriting from their fathers on an individual basis. Consequently, there is no longer any legal stigma surrounding an illegitimate birth.[2]

Moreover, Mr. Lufft's concern about Samantha's illegitimate status is unnecessary. West Virginia Code § 42–1–6 provides that "if a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, shall be deemed legitimate." Samantha was legitimized upon the parties' marriage. West Virginia Code § 42–1–7 holds that "the issue of marriages deemed null in law, or dissolved by Court, shall nevertheless be legitimate." Regardless of whether Erin Campbell and James Lufft are now divorced, Samantha remains legitimate. Given the complicated relationships existing between intermingled and remarried families in today's society, it is doubtful that Samantha's retention of her mother's surname would even raise an eyebrow, let alone subject her to ridicule or scorn.

Moreover, regardless of the reasoning behind the name change, it is obvious that the family law master failed to follow the proper procedures necessary for a name change found in W.Va.Code § 48–5–1 *et seq.* (1992). West Virginia Code § 48–5–1 provides the method necessary for a person to change their name:

> Any person desiring a change of his own name, or that of his child or ward, may apply therefor to the circuit court or any other court of record having jurisdiction of the county in which he resides, or the judge thereof in vacation, by petition setting forth that he has been a bona fide resident of such county for at least one year prior to the filing of the petition, the cause for which the change of name is sought, and the new name desired; and previous to the filing of such petition such person shall cause to be published a notice of the time and place that such application will be made, which notice shall be published as a Class I legal advertisement in compliance with the provisions of article three [§ 59–3–1 *et seq.*], chapter fifty-nine of this code and publication area for such publication shall be the county.

West Virginia Code § 48–5–2 provides the method for objections to the change of name:

> Any person who is likely to be injured by the change of name of any person so petitioning, or who knows of any reason why the name of any such petitioner should not be changed, may appear at the time and place named in the notice, and shall be heard in opposition to such change.

West Virginia Code § 48–5–3 sets forth the standards by which a court determines whether the name change was proper:

---

**2.** In *Williamson v. Gane,* 176 W.Va. 443, 345 S.E.2d 318 (1986), this Court held that the rule in *Adkins,* which permits an illegitimate child to inherit from both mother and father, is fully retroactive where there has been no justifiable and detrimental reliance upon the invalidated law.

Upon the filing of such petition, and upon proof of the publication of such notice in the manner set forth in the petition, and being satisfied that no injury will be done to any person by reason of such change, that reasonable and proper cause exists for changing the name of petitioner, and that such change is not desired because of any fraudulent or evil intent on the part of the petitioner, the court or judge thereof in vacation may order a change of name as applied for.

In this case, neither the family law master nor the trial judge required notice of the name change, permitted the appellant an opportunity to be heard in opposition following the notice, made a finding that no injury would be done by the change, or that the name change was not requested because of any "fraudulent or evil intent." We find that the trial court and family law master erred in failing to do what was required, not only by statute, but also by case law.

■ In *In re Harris*, 160 W.Va. 422, 236 S.E.2d 426 (1977), this Court held that since children bear the surname of their father by custom and usage in this society, a father who has exercised his parental rights and discharged his parental duties cannot have the name of his minor child changed from the father's surname unless upon proper notice and by clear, cogent, and convincing evidence, it is shown that such changes will significantly advance the best interests of the child. *Id.* at syl. pt. 3. Of course, where the father has abandoned the child, a change may be ordered. Thus, when a name change involves a minor child, proof that the change is in the best interests of the child is necessary over and above what is required by W.Va.Code §§ 48–5–1 *et seq.*

■ Although the *Harris* case was weighted toward the child retaining the father's surname, we believe it is equally applicable to any name change, including one changing a child's last name from the mother's maiden name to the father's surname. *Harris* requires that any name change involving a minor child be made only upon clear, cogent, and convincing evidence that the change would significantly advance the best interests of the child. *Id.* There is no evidence that the family law master made any examination of the best interests of the child when recommending the name change.

While there is no question that Mr. Lufft has not abandoned Samantha, there are significant differences from the *Harris* case. We note that Samantha has never held the surname of her father. The birth certificate, the certificate of live birth, the social security card, and the medical card all are in the name of Samantha Marie Campbell. No effort was made by the appellee to change the child's name before the divorce proceeding. The time frame makes this request for a name change look suspiciously like an attempt to anger the appellant.

Further, on appeal, the only evidence presented by the appellee is that failure to change the child's name to Lufft would place her under the "cloud of illegitimacy." As we have pointed out earlier in this opinion, there can be no stigma attached when the child is legitimate. The simple fact that her parents are divorced does not make Samantha illegitimate. In fact, we believe that it is in Samantha's best interest for her name to remain Campbell. Her mother retains custody. She has been known as Campbell for several years. Although Mr. Lufft acknowledged paternity when the child was born, he showed no interest in changing her name at any point prior to the divorce proceeding. Thus, any allegation that he now requests a change because he is afraid of losing contact with her ignores the fact that he made no attempt to change her name before he and the appellant began living together. Furthermore, Samantha has maintained the name Campbell for four years without showing signs of being traumatized. Absent more convincing evidence, we can find no reason to change the child's name.

Finally, we note that the appellee failed to avail himself of the opportunity to have Samantha's surname changed to Lufft

upon her birth. West Virginia Code § 16–5–24(d) (1992), provides:

> Upon request, and upon receipt of a sworn acknowledgement of paternity of a child born out of wedlock signed by both parents, the state registrar of vital statistics shall amend the certificate of birth to show such paternity if paternity is not shown on the birth certificate. Upon request of both of the parents, *the surname of the child shall be changed on the certificate to that of the father.* Such certificate shall not be marked 'amended.' (Emphasis added.)

No effort was made by the appellee to have Samantha known as Lufft at her birth. Under the particular facts of this case, it is too late, four years later, to make that change now.

The appellant points to numerous cases around the country in which other courts have addressed the issue of a child using the mother's maiden name. In *State ex rel. Spence–Chapin Services to Families and Children v. Tedeno*, 101 Misc.2d 485, 421 N.Y.S.2d 297 (1979), the New York Court ruled that:

> The cases giving married fathers a right in the names of their offspring are not applicable to the facts before this Court. All such cases involve an application to change or prevent a change in the name of a child who has borne a family name. Looked at from the child's standpoint, there is a presumption that change is detrimental and must be justified. The situation here, where the child has never used her father's name, is far different.

*Id.*, 421 N.Y.S.2d at 299. The Court ruled that the child's best interests control and, in that case, since the mother had custody, was the primary caretaker, and the child had always been known by the mother's maiden name, there was "no purpose to a name change." *Id.*

There is also merit to the appellant's second argument regarding visitation. In *Ledsome v. Ledsome*, 171 W.Va. 602, 301 S.E.2d 475 (1983), this Court held that the right to visitation is determined by considering the child's welfare. Visitation restrictions are permitted, depending on the particular facts of the case. *See St. Clair v. St. Clair*, 166 W.Va. 173, 273 S.E.2d 352 (1980). In this case, the mother does not accuse Lufft of physically or sexually abusing Samantha. However, it is clear that Lufft had no qualms about battering Erin Campbell in front of the child. Since there are continuing allegations of physical violence against his current girlfriend, we believe that the visitation should be supervised for a longer period of time. We remand the case to the family law master in Ohio County so that the evidence regarding Mr. Lufft's violent proclivities can be examined and the visitation order adjusted to extend the supervised visitation until such a time as Mr. Lufft can demonstrate that he is no longer violent.

Consequently, the order of the Circuit Court of Ohio County granting unsupervised visitation and changing the child's name to Samantha Marie Lufft is reversed and remanded with orders to reinstate Samantha's surname as Campbell and to adjust visitation in accordance with this opinion.

Reversed.