IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**
**May 20, 2013**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1694

IN RE: NAME CHANGE OF JENNA A.J.

_____

Appeal from the Circuit Court of Monongalia County
Honorable Philip D. Gaujot, Judge
Civil Action No. 11-P-194

REVERSED
_____

Submitted: April 17, 2013
Filed: May 20, 2013

Suzanne Weise, Esq.                           Jessica L. Miller
James Fogartie, Student Attorney              Pro Se
Andrew Felts, Student Attorney
WVU Child and Family Law Clinic
WVU College of Law
Morgantown, WV
Counsel for Petitioner

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 SE.2d 167 (1997).

2. "Children bear the surnames of their fathers by custom and usage in this society, and where a father who has exercised his parental rights and discharged his parental responsibilities is dead, or a living father exercises his parental rights and discharges his parental responsibilities, the name of a minor child cannot be changed from that of the father unless upon proper notice and by clear, cogent and convincing evidence it is shown that such change will significantly advance the best interests of the child." Syl. Pt. 3, *In re Harris*, 160 W.Va. 422, 236 S.E.2d 426 (1977).

3. "When a name change involves a minor child, proof that the change is in the best interests of the child is necessary over and above what is required by W.Va. Code § 48-5-1 *et seq.* (1992)." Syl. Pt. 2, *Lufft v. Lufft*, 188 W.Va. 339, 424 S.E.2d 266 (1992).

4.  "Any name change involving a minor child may be made only upon clear, cogent, and convincing evidence that the change would significantly advance the best interests of the child."  Syl. Pt. 3, *Lufft v. Lufft*, 188 W.Va. 339, 424 S.E.2d 266 (1992).

5.  All name change applications involving a minor child, including those that involve the use of two hyphenated surnames, may be made only upon a showing of clear, cogent, and convincing evidence that the name change will significantly advance the best interests of the child.

LOUGHRY, Justice:

Petitioner Jim J. appeals from the November 9, 2011, order of the Circuit Court of Monongalia County, granting the name change that the respondent Jessica M. had sought for Jenna A.J.,[1] the minor daughter of the parties. After initially seeking to change Jenna's surname from the petitioner's surname, which she took at birth, to the respondent's surname,[2] Jessica M. amended the name change petition to request a hyphenated surname for Jenna A.J. just before the hearing[3] in this matter. After hearing testimony from both the petitioner and the respondent, the trial court issued its ruling in favor of the requested hyphenated name change.[4] In challenging the lower court's ruling, the petitioner argues that the trial court failed to properly apply the standard which governs a name change request. While the respondent did not file a brief before this Court, during the oral argument of this matter she argued that the petitioner did not show, either below or at the appellate level, that the name change injured him.[5] Upon our careful review of the record submitted in this

---

[1]Consistent with our longstanding practice in sensitive matters, we use initials to identify the parties rather than their full surnames. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n.1, 387 S.E.2d 537, 538 n.1 (1989).

[2]The parties in this case were never married.

[3]The hearing was held on October 11, 2011. Jessica M. appeared *pro se* at that hearing as well as in the proceedings before this Court.

[4]Under the court's ruling, Jenna's surname would be comprised of the mother's surname followed by the father's surname.

[5]*See* W.Va. Code § 48-25-101 (2011) (providing that name change may be ordered
(continued...)

1

matter in conjunction with applicable law, we find that the trial court committed error in granting the name change and, accordingly, reverse.

## I.  Factual and Procedural Background

On August 30, 2011, Jessica M. filed a *pro se* Petition for the Name Change of Jenna  A.J.  The grounds identified in the petition as support for the name change were that the petitioner was "no longer willing to participate fully in the child's life" and that the respondent was "the sole provider for the child."  Based on these two allegations, the respondent declared that she wanted Jenna A.J. "to have the same name as her mother."

In response, the petitioner[6] submitted a memorandum in opposition to the name change request.  In explanation of his request for a hearing on the petition, Jim J. stated that "he is a party likely to be injured by the change of his daughter's name."  In addition, the petitioner argued that Jessica M. had failed, through the filing of the petition, to provide any evidence that the alteration of the child's surname would significantly advance the best interests of Jenna A.J.

---

[5](...continued)
upon finding that "no injury will be done to any person by reason of the change . . . [and] that a reasonable and proper cause exist for changing the name").

[6]In contrast to the respondent, the petitioner was represented by counsel throughout the name change proceedings.

On the day of the hearing, the respondent, who proceeded on her own behalf, presented the circuit court with an Amended Petition for Name Change. Through the amended petition, Jessica M. altered her initial request to instead seek a hyphenated surname and provided the following explanation:

> The reason for having M[.] added is so my child will not be confused by having a different last name then [sic] mine. Jenna has always and will continue to be supported and cared for by me. Her biological father, Mr. J[.], and I were never married and will never marry; therefore she will be living in a M[.] household with me. Mr. J[.] only financially supported Jenna after being court ordered to do so. As of this day he has never been current with his child support payments. He never visited on a regular basis until the court directed such visits even though I always tried to set up regular visits without involving the courts. I do not see any reason that changing her name will injure Mr. J[.] but keeping it as is, will only cause confusion for Jenna.

After testifying that she was not seeking the name change for any improper or illegal purpose, Jessica M. informed the trial court that she wanted Jenna A.J. to have her surname because the parties had never married and, since the parties separated,[7] she had been her daughter's sole provider. When the circuit court inquired specifically as to how the name change would be in the best interests of Jenna A.J., the respondent testified that "I think it'll just make it easier for her" when she gets into school if she has both of her parents' names.

---

[7]The respondent indicated that the separation had occurred more than one year prior to the hearing date.

3

Upon further questioning by the trial court, the respondent stated that the petitioner had not been active in Jenna A.J.'s life until she went to court for purposes of seeking child support.

When the petitioner was permitted to offer his testimony, he stated that he had reduced his child support arrearage to $249.[8] He indicated that he was enjoying the time that he spends with Jenna A.J., but testified about several verbal altercations he had experienced with the respondent in connection with exercising his visitation rights.[9] When the respondent directly questioned him as to how the proposed hyphenated name change would cause him injury, Jim J. testified "[t]o be honest I don't really know Ms. M[.] anymore." Continuing, he stated:

> you know, she wants to modify my daughter's name in any way therefore she wants to do more and I'm just afraid of that, you know, if this was the issue when she was born then we should have addressed it then not years after when she's upset and now she wants to, you know, continuously do radical things. . . .

In its ruling of November 9, 2011, the trial court recognized that "while Mr. J[.] is currently in arrears with regard to his child support obligations, he is working to satisfy those obligations, and he is currently engaging in visitation with young Jenna pursuant to a Temporary Parenting Plan entered by the Monongalia County Family Court." Accordingly,

---

[8]He stated that it was initially $1200.

[9]According to the petitioner, these verbal arguments concerned unpaid child support.

4

the circuit court concluded that the petitioner was "exercising his parental rights and discharging his parental responsibilities." After observing that the petitioner "does not specifically articulate the harm that he will suffer" from the proposed name change, the trial court ruled as follows:

> [T]he Court does not perceive any harm befalling Mr. J[.] as a result of the name change requested pursuant to Ms. M[.]'s amended petition. Had Ms. M[.] remained steadfast in her effort to eliminate the child's paternal surname, the Court may very well have reached a different conclusion in this case. The hyphenated surname . . . adds the maternal surname; it does not eliminate the paternal surname. Therefore, Mr. J[.]'s protectable interest, as this Court sees it, remains protected.
>
> Additionally, the Court finds that Ms. M[.] has, in fact, satisfied her burden under *Harris*, and has shown by clear, cogent, and convincing evidence that the proposed, hyphenated name will significantly advance young Jenna's best interests.[10]

It is from this ruling that the petitioner now seeks relief.

## II. Standard of Review

We articulated the applicable standard of review in syllabus point two of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 SE.2d 167 (1997):

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate

---

[10]The trial court further opined: "Based upon the circumstances underlying this case, it appears highly unlikely that Jenna will grow-up and develop a familial identity within a nuclear or traditional family setting. By her new name, Jenna will be better able to identify herself as a member of her paternal *and* maternal families." (emphasis in original).

5

disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

With this standard in mind, we proceed to determine whether the lower court committed error in granting the name change sought by the respondent in this case.

### III. Discussion

More than thirty-five years ago, this Court first addressed the standard to be employed when a parent seeks to effect a name change for his or her child. In syllabus point three of *In re Harris*, 160 W.Va. 422, 236 S.E.2d 426 (1977), we set forth the following rule:

> Children bear the surnames of their fathers by custom and usage in this society, and where a father who has exercised his parental rights and discharged his parental responsibilities is dead, or a living father exercises his parental rights and discharges his parental responsibilities, the name of a minor child cannot be changed from that of the father unless upon proper notice and by clear, cogent and convincing evidence it is shown that such change will significantly advance the best interests of the child.

The petitioner argues that the respondent failed to satisfy her burden under *Harris* and its progeny.

By statute, "[a]ny person desiring a change of his own name, or that of his or her child, may apply to the circuit court or family court of the county in which he or she

6

resides. . . ." W.Va. Code § 48-25-101 (2009).[11]  Any person who objects to a proposed name change may oppose the application by alleging injury or by asserting other grounds of harm.  *See id*. § 102; *see also* W.Va. Code § 48-25-101 (precluding convicted felons and registered sex offenders from securing name changes and denying applications sought for purpose of avoiding debt or creditors and state or federal identity laws).  Before a name change can be granted, the circuit or family court is required to ascertain that there are no statutory prohibitions to the name change; that reasonable and proper cause exists for the name change; and that there is no fraudulent or evil intent underlying the application.  *See* W.Va. Code § 48-25-103 (2009).

Melding the statutory requirements for a name change with the need to impose a standard for reviewing such applications, we held in syllabus point two of *Lufft v. Lufft*, 188 W.Va. 338, 424 S.E.2d 266 (1992), that "[w]hen a name change involves a minor child, proof that the change is in the best interests of the child is necessary over and above what is required by W.Va. Code § 48-5-1 *et seq.* (1992)."[12]  Crystallizing the evidentiary standard first announced in *Harris*, we held in syllabus point three of *Lufft* that "[a]ny name change involving a minor child may be made only upon clear, cogent, and convincing evidence that

---

[11]The statutory provisions governing name changes were previously codified at West Virginia Code § 48-5-1 to -7 (1996).

[12]As noted above, the name change statutes that were previously set forth at West Virginia Code § 48-5-1 to -7 now appear at West Virginia Code § 48-25-101 to -107.

7

the change would significantly advance the best interests of the child." 188 W.Va. at 339, 424 S.E.2d at 266, syl. pt. 3.

At first glance, the ruling at issue suggests that the trial court properly applied the applicable standard. In granting the name change application, the trial court concluded that Jessica M. "has shown by clear, cogent, and convincing evidence that the proposed, hyphenated name will significantly advance young Jenna's best interests." Upon further examination, however, the circuit court revealed that its decision was shaped by an assumption that a different and, arguably, more lenient standard applied to this case given the respondent's request for a hyphenated, rather than outright, name change. This is clear from the trial court's observation that "[h]ad Ms. M[.] remained steadfast in her effort to eliminate the child's paternal surname, the Court may very well have reached a different conclusion in this case." The implication from this statement is that the respondent would have had to produce additional evidence to convince the trial court that a name change to her surname was warranted.

By implying that a sliding scale applies in terms of the evidence necessary to secure a hyphenated name change, as compared to an outright surname change, the trial court was misguided. This Court has never adopted a different evidentiary standard based upon the nature of the name change sought. As we sought to make clear in syllabus point three of

*Lufft, all* name change applications involving a minor child, including those that involve the use of two hyphenated surnames, may be made only upon a showing of clear, cogent, and convincing evidence that the name change will significantly advance the best interests of the child. *See id.*

In reviewing the record submitted in this case to determine whether the trial court committed error, we are troubled by the paucity of evidence that was admitted in this case in support of the proposed name change. And given the timing of the request,[13] we are concerned that, as we cautioned against in *Lufft*, the name change may have been sought for improper purposes. *See* 188 W.Va. at 342, 424 S.E.2d at 269 (observing that "[t]he time frame makes this request for a name change look suspiciously like an attempt to anger the appellant"). Quite frankly, the trial court's ruling has more grounds offered in justification of the name change than the record itself discloses.[14] At best, the record demonstrates the mother's preference for her daughter to have a hyphenated surname based on the perceived benefits to be realized in the future when she is of school age. Currently, however, the record simply does not disclose the necessary degree of "clear, cogent, and convincing evidence that

---

[13]The name change petition was filed during the same time that the parties were engaged in proceedings that initially pertained to visitation and now have been expanded to include custody.

[14]And while we recognize the respondent's lack of representation may account for this dearth of evidence, we are still required to find the necessary evidence to support the name change.

9

the name change would significantly advance the best interests of the child." *Lufft*, 188 W.Va. at 339, 424 S.E.2d at 266, syl. pt. 3.

## IV.  Conclusion

Based on the foregoing, we are compelled to conclude that the Circuit Court of Monongalia County erred in its decision to grant a name change to the minor child in this case.  Accordingly, the case is reversed.

Reversed.