IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WILLIAM S.,**
**Respondent Below, Petitioner**

FILED

**February 27, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-206**    (Fam. Ct. of Ritchie Cnty. No. FC-43-2020-D-59)

**AMY H.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner William S.[1] appeals the Family Court of Ritchie County's April 24, 2023, "Final Order," which denied his petition to change the name of his son and ordered an automatic name change of his son contingent upon any future name change of Respondent Amy H.[2]  Amy H. filed a response. William S. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the lower tribunal's decision is affirmed in part, reversed in part, and this case is remanded for further proceedings consistent with this decision.

The parties are the biological parents of E.J.H. ("the Child") born in October 2020. The parties were never married, never cohabitated, and were not in a romantic relationship at time of the Child's birth. No father was listed on the birth certificate at the time of the Child's birth and the Child was given Amy H.'s surname.

On October 13, 2020, William S. applied for services with the Bureau for Child Support Enforcement ("BCSE") to request genetic testing to determine if he was the

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] William S. is represented by Linda Hausman, Esq., and Samantha L. Koreski, Esq. Amy H. is represented by Katharine L. Davitian, Esq.

biological father of the Child. On December 14, 2020, the BCSE filed a complaint in family court to establish paternity and, on April 7, 2021, the family court entered an order requiring the parties to undergo genetic testing. Paternity testing was conducted and by report dated May 5, 2021, it was deemed 99.9% probable that William S. was the biological father of the Child.

On May 20, 2021, William S. filed a petition for custodial allocation that included a request to change the Child's surname to William S.'s surname. The family court held a hearing on February 15, 2022,[3] during which the court ordered both parties to have joint decision-making authority regarding the Child, extended William S.'s parenting time, and required consent from the other parent before the Child's medical or childcare provider could be changed. On February 23, 2022, a certificate of paternity was issued naming William S. as the father of the Child, and a final paternity order was entered on March 1, 2022.

The family court held a final hearing on William S.'s petition for custodial allocation and request for name change on December 9, 2022. Prior to the hearing, the parties reached an agreement on all issues except parenting time during Thanksgiving and changing the Child's surname. The parties came to a consensus regarding Thanksgiving during the hearing, and, thus, all that remained for the court to decide was William S.'s request to change the Child's surname.

During the final hearing, the family court heard testimony from both parties. In support of his request, William S. asserted that the Child having his surname would benefit the Child because William S. has close family in the area who bear the same surname; the Child bears the surname of Amy H.'s late husband; and Amy H. changed her surname when she married her late husband and is likely to change it again if she remarries.[4] William S. argued that it would be in the Child's best interest to have the same surname of a biological parent. He further contended that he had diligently pursued the determination of paternity and establishment of a parenting plan two days after he was determined to be the father. William S. stated that when he and Amy H. were a couple, they discussed changing the Child's surname to his surname; however, Amy H. disagreed and averred that she has never considered changing the child's surname to that of William S. and requested the family court to deny the name change request. William S. proposed various name changes to incorporate his surname since Amy H. objected to his initial proposal; she

---

[3] The procedural delay was due to various conflicts with the family court judges assigned to this case. The matter was heard by two different judges before the presiding judge was appointed.

[4] The record is devoid of when Amy H.'s late husband passed; however, the Child was conceived at some point following his death.

objected to changing the Child's surname, hyphenating it, and/or replacing the Child's middle name with William S.'s surname.

On April 24, 2023, the family court entered a "Final Order" adopting the parties' parenting plan agreement and denying William S.'s request to change the Child's surname, finding that it was not in the Child's best interest. Instead, the court ordered that the Child's surname would automatically change to the William S.'s surname if Amy H. changed her name in the future. This appeal followed.

When reviewing the order of a family court, we apply the following standard of review:

> "In reviewing ... a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate review of a family court order).

On appeal, William S. raises two assignments of error. First, William S. asserts that the family court abused its discretion in finding the name change was not in the best interest of the Child. William S. argues that "[h]e believes strongly that the [C]hild should have the last name of a parent, and not the [last name of the] late husband of a parent." He further stated that if Amy H. remarries and changes her surname, the Child will have neither parent's surname. He asserts that the family court "seemed more interested in [Amy H.'s] needs as opposed to the required inquiry into the best interest of the [C]hild" because it prioritized Amy H.'s name preference for the Child over his name preference. We disagree and find no merit in William S.'s argument.

William S.'s assertion is misguided. The Supreme Court of Appeals of West Virginia has consistently held, "[a]ny name change involving a minor child may be made only upon clear, cogent, and convincing evidence that the change would significantly advance the best interests of the child." Syl. Pt. 3, *Lufft v. Lufft*, 188 W.Va. 339, 424 S.E.2d 266 (1992). The focus of our review is whether William S. produced "clear, cogent, and convincing evidence that the change would significantly advance the best interests of the Child" or whether, as William S. seems to assert, Amy H. failed to do so. The burden to change the Child's name belongs to William S. as the name change proponent; Amy H. is not required produce any evidence in opposition of the name change. *See John W. v. Rechelle H.*, No. 18-0329, 2019 WL 2168795 at *2 n.2 (W. Va. May 20, 2019)

3

(memorandum decision) ("Petitioner is the name-change proponent and he, thus, is the party required to make the appropriate evidentiary showing.").

As evidenced by the record below, William S. takes issue with the fact that Amy H.'s surname is not her "biological surname" and is her married surname. Regardless, it is her surname. As the *John W.* court noted, "there is no legal preference that a child be given either parent's surname, 'but rather a focus on whether any name change would significantly advance the child's best interests.'" *Id.* at *2. Thus, it is clear that the law emphasizes the evidentiary standard for *changing* a child's name. In his brief, William S. argues that the family court allowed Amy H. "to absolutely dictate the name of the [C]hild" and favored her because she birthed the Child. Once again, William S.'s argument is flawed because the name change statute governs just that – name *changes* – not the initial naming of newborns. The fact that the Child was given Amy H.'s surname at birth is inconsequential; the heart of the issue is whether the proposed name *change* significantly advances the best interest of the Child.

William S. presented the family court with evidence that he was born and raised in Ritchie County and continues to reside there; he has a large, close family in the area, most with the same surname; and he lives next door to his adult son and grandson, who also bear his surname. The father in *John W.* also argued that the proud history of his surname was in the child's best interest and thus, warranted a name change. Nonetheless, the Supreme Court of Appeals of West Virginia held:

> These factors—considered in our current society where blended families are plentiful, parents equally contribute to the care and support of children, and matriarchal heritage is no less celebrated than that of our fathers—are insufficient to establish that the requested name change is in the best interest of the parties' child.

*Id.* The record reflects that although William S. has been involved in the Child's life early on and continues to be involved, he provided no evidence that changing the Child's last name to his surname would significantly advance the Child's best interest. To the contrary, his arguments centered on why the Child's current name was ill-suited and not in the Child's best interest, which is not the applicable evidentiary standard. Accordingly, we affirm the family court's decision regarding this issue.

In his second assignment of error, William S. asserts, and Amy H. agrees, that the family court erred when it ordered the Child's surname to automatically change in the future if Amy H. ever changed her name. We too agree. West Virginia Code § 48-25-101 (2013)[5] governs the procedure and legal requirements to be followed in a name change

---

[5] West Virginia Code § 48-25-101 (2013) states, in part, as follows:

proceeding. The statute requires the petitioning party to file a verified petition setting forth certain facts and to publish notice of the hearing as a Class I legal advertisement. Here, the family court's order fails to comply with any of the requirements in West Virginia Code § 48-25-101. Instead, the order requires the child's surname to automatically change upon a condition precedent, the changing of Amy H.'s surname. Accordingly, we find the family court's failure to require the parties to adhere to West Virginia Code § 48-25-101 and permitting an "automatic" name change upon the changing of Amy H's surname, was an abuse of discretion and court's ruling in this regard is reversed.

Accordingly, we affirm, in part, and reverse, in part, the Family Court of Ritchie County's April 24, 2023, "Final Order," and remand this case for further proceedings consistent with this decision.

Affirmed in part, Reversed in part, and Remanded.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

(a) A person desiring a change of his or her own name, or that of his or her child, may apply to the circuit court or family court of the county in which he or she resides by a verified petition setting forth and affirming the following:

. . . .

(b) After filing the petition and at least ten days before the hearing to consider the application, the person shall cause a notice of the time and place that the application will be made to be published as a Class I legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code.

5